# ALBANY OYER AND TERMINER.

## The People agt. Charles H. Phelps.

*False entries in account book made with intent to deceive and defraud.*

A prisoner will be convicted of forgery, where the evidence shows that he made a false entry in a ledger under his control as cashier or clerk in a public office, for the purpose of deceiving and defrauding.

It is sufficient if it was made for the purpose of covering up any illegal taking of money by the prisoner, whether that money was taken at the time when the entry was made, or if it was taken at a time anterior and prior. In law he is presumed to have intended to defraud, if for any period of time he meant to cover up the illegal taking of the money.

*October* 13, 1874.  *Indictment, forgery, third degree.*

### Judge Westbrook's Charge.

*Gentlemen of the jury:*  The questions of law which this case involves have been passed upon by the court, and if the court is wrong in its position upon these various propositions the courts above will correct it. With our decision upon these questions you have nothing to do. Your duty is entirely separate and distinct from that which the court has performed, and you will pass only upon such questions as the court shall leave to you to decide. The questions of fact in this case will be left to you, and you will find your verdict according to your convictions upon these facts; or, rather, you will find your verdict according as the evidence satisfies your judgment these facts are. The prisoner at the bar, Charles H. Phelps, is indicted under the following provisions of the statute: "Every person who, with intent to defraud, shall make any false entry, or shall falsely alter any entry made in any book of accounts kept in the office of the comptroller of the state,

or in the office of the treasurer, or of the surveyor-general, or of any county treasurer, by which any demand or obligation, claim, right or interest, either against or in favor of the people of the state or any county or town, or any individual shall be, or shall purport to be discharged, diminished, increased, created, or in any manner affected, shall, upon conviction, be adjudged guilty of forgery in the third degree." You will observe from the phraseology of the statute that it is very broad and very sweeping. It is designed to prevent any false entries, with the intent to defraud, upon either the books of the comptroller's office, or the treasurer's office, or the surveyor-general's office, or of any county treasurer's office, and the object and purport of the statute is very apparent, because unless it is made a crime great injustice could be done, and the actual position of the accounts could never be known. The people claim that the prisoner at the bar, Charles H. Phelps, then being a clerk in the office of the treasurer of this state, and called, by way of distinguishment of the office, the cashier, did, on the 31st day of August, 1873, make this false entry upon the book which is labeled the "ledger," and which was known in the office of the treasurer as the "bank ledger," to wit: August 31. To transfer, $200,000.00 It is upon page 131 of that book, and at the top of the page are these words, "Mechanics and Farmers' Bank," signifying by that that it is the account of the moneys deposited with the Mechanics and Farmers' Bank. The first question of fact for you to decide is this: Did the prisoner make that false entry? That is the first question. As I understand the evidence in the case, it is all one way upon that question. Mr. Milks and Mr. Wood, who were both co-clerks in the office of the state treasurer with the prisoner at the bar, and who say they are intimately acquainted with the handwriting of the prisoner, declare that entry to be in the handwriting of the prisoner. There is no contradictory evidence. Two witnesses, then, testify this to be the handwriting of the prisoner, and there is no evidence contradictory of this fact. From this evidence,

and if there be any other evidence in the cause you will remember it, you are to decide whether or not the prisoner made the entry. If you come to the conclusion that he made the entry, the next proposition for you to consider is: Was it false? As I understand it, the counsel for the prisoner admit it was; that there was, in fact, no $200,000 transferred from any other bank into the Farmers and Mechanics' Bank; so you have it proved by the admission of the counsel for the prisoner, which is to control for the purposes of the cause, that this entry is in fact false; and you are to say, from the evidence of Mr. Milks and Mr. Wood, or any other evidence you may find in the case, whether or not the prisoner made that entry. The next question you are to pass upon is: With what intent was that entry made? If it was made for the mere purpose of a harmless deception, and with no intent to defraud, of course the prisoner could not be convicted, because the language of the statute is, " every person who, with intent to defraud, shall make a false entry." If I write the names of any one of you upon a note, though I mean to deceive you by way of a joke, and not to obtain any advantage to myself or to defraud you, I am not guilty of any crime. I therefore charge that you must find from the evidence in the case that this false entry, if made by the prisoner, was made with intent to defraud, before you can convict; and it is sufficient if you find that it was made for the purpose of covering up any illegal taking of money by the prisoner, whether that money was taken at the time when the entry was made, or if it was taken at a time anterior and prior. In law, he is presumed to have intended to defraud, if, for any period of time, he meant to cover up the illegal taking of the money. It is not at all important if he actually designed and intended that the Mechanics and Farmers' Bank should eventually actually pay that amount of money, or that the state should eventually actually lose it; it is enough to constitute a crime if done for the purpose of enabling him to defraud the people or the bank for any period of time. You will see how it might operate. Perhaps at the time he made

People agt. Phelps.

the entry the money was in his possession, or where it could be reached. If he made this entry for the purpose of lulling the vigilance of the officers of the state, so that they could not proceed against him at once and recover the money, and so enable him more safely for a time to use the money, it was an intent to defraud, under the statute. It is all important, for the purpose of enforcing honesty in employes, that the books should be right and true, that the superior officers in the department can at once detect any irregularity; and if the prisoner made a false entry in the books for the purpose of blinding the eyes of his superiors, or of any persons, for the time, so that the misappropriation of money could not be at once discovered, he is guilty of the intent, under the statute. You are to find the intent. I leave it as a question of fact for you to pass upon, repeating that if it was a mere harmless piece of deception intended to be practiced, then he is not guilty, and that you must find he was guilty of intent to defraud. In passing upon the intent, you will ask yourselves what intent could a clerk in the office of the treasurer have had in making a false entry of this magnitude? Could it have been for an innocent or harmless purpose? You are to say; it is not for the court to say. No matter how clear the court's views of the intent may be from the fact of the entry, you are to pass upon it; but I submit to you as a legitimate argument: With what intent could the prisoner have made the entry if not for the purpose of defrauding? It purports to be a book which is to contain facts not fiction. It purports to be an accurate account of the dealing between the bank and the state. For what good or innocent purpose could it have been made? I leave it for you to pass upon. If you can say it was innocent, and made for an innocent purpose, you will give him the benefit of the finding, and acquit him; but you ought to say so in view of your responsibility as jurors, and you ought to say so upon your oaths. It is no answer to the prosecution for counsel to say or argue that this was bunglingly done; that an investigation into the affairs of

the office, an investigation of other books and papers would have at once discovered the fraud. The intent cannot depend upon the skill or want of skill of the person who commits the crime. Fortunately for the administration of justice it seldom occurs that the criminal can cover up his tracks so perfectly that discovery is impossible. It is true that an acute technical investigation into all the books of the office would have at once discovered it, but it is for you to say whether or not such an investigation is always made, and whether or not this would not deceive the mere inspector who did not make a careful examination. If it was designed to blind the eyes of other individuals in the office, and for the time to cover up the defalcation or improper use of moneys, then he is guilty of the intent of which the statute speaks. As bearing upon this question of intent, there is a piece of evidence put in by the prosecution to which I call your attention. It is contained in a letter written by the prisoner from New York, and bears date the 4th day of October, 1873. One counterpart was sent to Mr. Raines' office here, and another to his private office or bank at Rochester. It reads as follows :

"Hon. THOMAS RAINES, *Treasurer:*

"DEAR SIR. — The most painful part of the calamity that has overtaken me, and that I now write to announce to you, is the consideration of the extent to which yourself and Mr. Hopkins, or yourself and others may be included. I cannot recover from serious losses incurred in heavy grain speculations in the west nearly six months ago. I have carried the burden for so long from the simple fact that my figures as to the amount on deposit were never questioned. But the complaints by the banks of last week, and the consequent investigations, necessitate my now avowing to you that I cannot make my account good. Exactly how much the deficiency amounts to, I do not know. I feel confident, if unmolested I can soon reduce the amount, and gradually and before long make it all up. And the better to enable me to do this, I

deem it wisest to leave Albany for a time, so that I can direct those efforts, which shall be ceaseless until restitution is made. A gentleman of New York city, whose advice I have had occasion to take, will, at my request, call upon you to confer as to any course you may suggest or wish pursued, or as to any possible way of saving yourself from ill consequences.

"Respectfully yours,

"CHARLES H. PHELPS."

I leave it to you to say from this letter whether the prisoner does not admit here the intent with which the alteration of the books was made, or rather whether he does not admit the intent for which the false figures were made. You are to say, first, whether he intended to include this $200,000; and if so whether he does not admit he made the false figures for the purpose of covering up the illegal appropriation of the moneys. If he did, he made the false entries with the intent to defraud. And let me here say in passing to you, is it not apparent, from the letter written to Mr. Raines, that very many imputations cast upon that officer by insinuation are groundless and false? If Mr. Raines had given any consent either directly or indirectly to the prisoner to use the money, would he have written to him in the strain he does? Would he then say to him as he does, "I have carried the burden for so long from the simple fact that my figures as to the amount on deposit were never questioned; but the complaints by the banks of last week, and the consequent investigations necessitate my now avowing to you that I cannot make my account good?" If Mr. Raines had given his consent to the prisoner to use the money, would he have made the avowal in that form? However, that is not an important question for you to consider. I merely make that suggestion in passing in justice to a witness. You are to find with what intent was it made, if it was made. If to cover up any defalcation and enable him to abstract moneys, or to have the Mechanics and Farmers' Bank pay it, or for any other fraudulent purpose, you will find him guilty.

There is another question of fact which I feel constrained to leave to you, and that is in regard to the other entry on the page. The indictment sets out a portion of the page, and describes the false entry as occurring in the midst of those particular entries which are given in the indictment. It is claimed on the part of the prisoner that this one entry, which is the fifth entry upon the page, and which is given in the indictment as November twenty-eighth, $125,000, is not correctly put in the indictment. It is claimed that it is, in fact, November eighteenth, and not November twenty-eighth. I charge you, gentlemen, in regard to this matter, that it would appear from an investigation of the paper and from the evidence in the case that a person might mistake these figures for twenty-eight, as charged in the indictment, and if the pleader made a mistake from an inspection of the papers, that would not *per se* vitiate the indictment. Besides, the prisoner is not charged with forging an instrument. He is simply charged with making a false entry upon the books, and as that entry alleged to have been forged has been correctly given, I do not think this is important, unless you shall find the figures were written upon the books when the indictment was drawn, eighteen and not twenty-eight, and unless you shall find it misled the prisoner in his preparing for his defense. Do you understand me? You are to find whether or not this was written the twenty-eighth or the eighteenth. If you find it was in fact written the twenty-eighth, that ends it. If you find it was written the eighteenth, then you are to find whether or not that misled the prisoner in his defending this indictment. That is a question of fact I will leave to you. I do not see any evidence of his having been misled by this entry. It seems that the prisoner and his counsel understood exactly the charge which was made, and that they understood he was indicted for making the false entry under the date of August thirty-one, of the $200,000, and that every possible defense which he could have made were this charged to have been on the eighteenth is made now. But then I am not to

decide that question, but you are. If you find, then, this was written on the eighteenth, designed to be written on the eighteenth, and that the prisoner was misled in preparing his defense to defend the indictment, you will acquit him; but if, on the other hand, you find it was written the twenty-eighth, that ends it; and if you find it did not mislead him, he cannot avail himself of the technical grounds of defense. The point is not whether it should have been the eighteenth, because it probably should have been. The transfer check bears date the eighteenth, and the entry in the book of the bank is the nineteenth, showing it should have been the eighteenth; but the question is: How was it written in the book itself? Because it is no misdescription of the entry if the book itself is erroneous. That you can only determine by the evidence in the case and an investigation of the paper. Let me here say to you that Mr. Warren, the expert, who has had experience for thirty years, inclines to the belief that it was written the twenty-eighth, and inclines to think the pencil mark was put there at the time of the examination, but he has no actual recollection of having put it there. You will remember that Mr. Milks and Mr. Wood, the other two witnesses, think it was written the twenty-eighth, and Mr. Wood swore he made a copy for the district attorney to draw his indictment, and in making that copy he made it the twenty-eighth. So then, with these instructions, I leave the case with you. I am not aware of there being any other question for you to pass upon, and you will pass upon these : First. Did the prisoner make the entry of August thirty-one, $200,000 ? Second. Was it false ? Third. Was it with the intent to defraud ? And then the last question in regard to the alleged mistake in the indictment: First. Was it written the twenty-eighth in fact? And, secondly. If not written the twenty-eighth, then could it by any possibility have misled the prisoner ?